—————————————————————

VICTOR ROSARIO, NILDA
MALDONADO, JOSE FLORES, and
NOEMI FLORES,

        Plaintiffs,

    v.

HARTFORD FIRE INSURANCE
COMPANY,

        Defendant.

1:19-cv-13328-NLH-KMW

**OPINION**

—————————————————————

**APPEARANCES:**

LOUIS GIANSANTE
GIANSANTE & ASSOCIATES, LLC
23 E. MAIN STREET
MOORESTOWN, NEW JERSEY 08057

    *Attorneys for Plaintiffs.*

PATRICK D. BONNER, JR.
MENZ BONNER KOMAR & KOENIGSBERG LLP
125 HALF MILE ROAD
SUITE 200
RED BANK, NEW JERSEY 07701

    *Attorneys for Defendant.*

**<u>HILLMAN</u>, District Judge**

    This matter comes before the Court on motion of Plaintiffs

Victor Rosario, Nilda Maldonado, Jose Flores, and Noemi Flores

(collectively, "Plaintiffs") to remand this action for untimely

removal (ECF No. 7) (the "Motion").[1]  While the parties present

the issue before this Court as relatively simple, it is actually

fairly complex.  For the reasons that follow, this Court

concludes it lacks subject matter jurisdiction over this action.

As such, this matter must be *sua sponte* remanded to the Superior

Court of New Jersey.

## BACKGROUND

### I.   The Initial State Court Action

On November 19, 2018, Plaintiffs filed an initial complaint

in the Superior Court of New Jersey, Law Division, naming The

Hartford Insurance Company ("Defendant"),[2] Dominic Antonini

("Antonini"), and Marco Construction & Management, Incorporated

("Marco Construction") as defendants (the "Initial State Court

Action").  See (ECF No. 7-1 ("Giansante Cert.") at ¶2, Ex. A).

The Initial State Court Action bore docket number CUM-L-814-18.

(Giansante Cert. at ¶2).  The complaint in the Initial State

Court Action contained two counts, one against Antonini and

---

[1] Also before the Court is Plaintiffs' motion to join additional
parties (ECF No. 21).  The Court will discuss this motion further,
to the extent relevant, infra.

[2] The Hartford defendant in this action, Hartford Fire Insurance
Company, argues that the Hartford defendant named in the state-
court action is a wrongfully pled, non-existent entity different
from the one appearing in this action.  For purposes of this
Court's analysis, the distinction is one without difference.

Marco Construction, and one against Defendant. (Giansante Cert., Ex. A at 7-8). As the matter was first filed in state court, the complaint does not plead the citizenship of any party.[3] See (ECF No. 14 at ¶3) ("the citizenship of the plaintiffs was not made explicit in the [c]omplaint").

## II. The Initial State Court Action Is Transferred To The Chancery Division

On March 22, 2019, the Initial State Court Action was *sua sponte* transferred from the Superior Court's Law Division to the Chancery Division.[4] (Giansante Cert. at ¶7). Upon transfer, the matter was assigned a new docket number indicative of its pendency before the Chancery Division: CUM-C-9-19.

At some point thereafter, the parties advised the chancery court that Antonini filed for bankruptcy. See (Giansante Cert. at ¶8). As a result, the Chancery Division scheduled a case

---

[3] Plaintiffs now admit that they are all citizens of New Jersey, and that Antonini and Marco Construction are both New Jersey citizens. (Giansante Cert. at ¶3; ECF No. 10). Moreover, the parties submitted a Joint Certification of Citizenship representing that Defendant is a Connecticut citizen. (ECF No. 10).

[4] New Jersey's Court Rules ("N.J.R.") explain that the Chancery Division handles actions "in which the plaintiff's primary right or the principal relief sought is equitable in nature[,]" N.J.R. 4:3-1(a)(1), while the Law Division handles other civil actions (with limited exceptions) not handled by the Chancery Division, see N.J.R. 4:3-1(a)(5). New Jersey's court rules further explain that actions may be transferred between the various divisions for case management purposes. See N.J.R. 4:3-1(b).

management conference to address continued proceedings.
(Giansante Cert. at ¶9).

Before the case management conference, on April 17, 2019,
Defendant filed a letter with the Chancery Division explaining
that "plaintiff's sole claim against Hartford is legal in
nature" and "but for the equitable claims [brought against other
defendants,] this would be a typical . . . coverage litigation
handled in the Law Division." (Giansante Cert., Ex. E). As
such, Defendant asked the Chancery Division to "retain
jurisdiction over [claims against other defendants] while
transferring the insurance contract claims back to the Law
Division for resolution." (Id.).

On April 22, 2019, the Chancery Division entered an order
transferring part of the state-court action to the Law Division
(the "Transfer Order"). (Giansante Cert., Ex. F). Most
notably, the Transfer Order provides that "Count Two of the
Complaint is transferred to the Law Division, Cumberland County"
and the transferred portion of the "case will be managed by the
undersigned pending further order." (Id.). The Transfer Order
sets forth various case management deadlines for the Law
Division portion of the case, including, that "Plaintiffs have
leave to file an amended complaint by May 13, 2019." (Giansante
Cert., Ex. F).

III. <u>Post-Transfer Events In State Court</u>

On April 26, 2019, the Clerk of the Superior Court issued an electronic notification following entry of the Transfer Order. (Giansante Cert., Ex. G). The Clerk's notification indicates that the Law Division and Chancery Division portions of the case would proceed under separate docket numbers. (<u>Id.</u>). The notice identifies no change in parties between the Law Division docket and the Chancery Division docket. (<u>Id.</u>). Despite the caption remaining the same, notification of the Clerk's message was sent exclusively to counsel for Plaintiffs, Defendant, and an interested third party. (<u>Id.</u>). Notice was not electronically mailed to Marco Construction or Antonini. (<u>Id.</u>).

On May 14, 2019, Plaintiffs filed a first amended complaint in the Law Division, naming only Defendant as a defending party (the "First Amended Law Division Complaint"). (ECF No. 1 at 76). The First Amended Law Division Complaint re-alleges many of the same facts as the complaint underlying the Initial State Court Action and contains three counts, one for declaratory judgment, one for insurance bad faith, and one for third-party beneficiary breach of contract. (<u>Id.</u> at 79-81). The First Amended Law Division Complaint does not allege the citizenship of any party.

5

IV. <u>Proceedings In This Court</u>

On June 3, 2019, Defendant removed the First Amended Law Division Complaint to this Court. (ECF No. 1). On June 18, 2019, this Court issued an Order to Show Cause as to why the matter should not be remanded after finding that Defendant failed to properly allege the citizenship of any Plaintiff. (ECF No. 6). That same day, Plaintiffs filed the present Motion. (ECF No. 7). On June 24, 2019, Defendant filed an amended notice of removal properly alleging the citizenship of the parties. (ECF No. 9).

## DISCUSSION

Proper removal of an action from state court to federal court on diversity of citizenship grounds requires (1) that complete diversity of citizenship exist and (2) timely removal of the diverse action. 28 U.S.C. § 1441 (requiring diversity); 28 U.S.C. § 1446 (explaining rules for timely removal). In this matter, the parties place the proverbial cart before the horse, focusing exclusively upon whether removal of the state court action was timely, without first addressing whether diversity of citizenship exists.

Plaintiffs contend that the Transfer Order rendered the Law Division portion of the case ripe for removal because it severed the various state court defendants and resulted in the creation

of distinct legal actions, one of which was removable based upon diversity. Defendant argues that the Transfer Order did not ripen the Law Division matter for removal, suggesting the Transfer Order did not create a stand-alone, removable action. Essentially, these arguments recognize the pivotal role that the Transfer Order plays in the removal analysis, but neither party fully appreciates the relationship between the Transfer Order and the issue of diversity of citizenship.

Before reaching the issue of whether removal was timely, the Court must first determine whether diversity of citizenship exists. Such inquiry necessarily requires the Court to address the parties' arguments regarding the Transfer Order: did the Transfer Order create a removable action based in diversity? Because the Court concludes it did not, the Court need not reach the issue of whether removal was timely, as the Court finds it was, in the first instance, never proper.

Because the Court finds that removal was improper, and because the Court concludes diversity of citizenship is lacking, this Court lacks subject matter jurisdiction over this action.

## I.    Subject Matter Jurisdiction

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441. Here, Defendant

removed based on the diversity of citizenship of the parties and argues that jurisdiction is appropriate under 28 U.S.C. § 1332.

A district court has original jurisdiction over a civil action where the litigation involves citizens of different States, and "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332.  If a matter is removable, removal must occur within 30 days of certain specified events.  28 U.S.C. § 1446.  The parties do not contest the existence of diversity and the satisfaction of the amount in controversy requirement.  Instead, they spar over whether removal was timely.

"The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court."  Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[5]  28 U.S.C. § 1447.  The Third Circuit directs that

---

[5] Importantly, this Court recognizes that it may not *sua sponte* remand this action based upon perceived procedural defects in the removal petition.  Nelson v. Medtronic, Inc. (In re FMC Corp. Packaging Sys. Div.), 208 F.3d 445, 451 (3d Cir. 2000) (concluding "the District Court exceeded its authority under section 1447(c) when it remanded these actions, *sua sponte*, based on what it identified as procedural defects in the petition for removal[,]" the procedural defect being that the

removal statutes are to be "strictly construed against removal"
and "doubts must be resolved in favor of remand."  Samuel-
Bassett, 357 F.3d at 396, 403.  Parties may not confer subject
matter jurisdiction by consent.  Id. at 396.

Despite the parties' acquiescence as to diversity, the
Court is not satisfied that diversity exists.  The Transfer
Order did not create a separate action removable on the basis of
diversity.  For that reason, the Court is not satisfied that it
has subject matter jurisdiction over this action, and therefore,
must remand this action to state court.

**A. Analysis**

1. Did The Transfer Order Create An Action That Was Removable
   Based Upon Diversity Of Citizenship?

   a. What Is A Transfer Order?

---

removal petition did not contain a statement alleging timely
removal).  In this action, the defect is not procedural, but
rather jurisdictional.  As such, *sua sponte* remand is an
available remedy.  Notably, however, if the Transfer Order did
create a removable action, there seems to be no dispute amongst
the parties that removal occurred more than thirty days after
Defendants became aware of that order.  The Court can discern no
meaningful procedural or substantive difference between the
Transfer Order and the First Amended Law Division Complaint
especially since it was the Defendant who sought to separate the
two actions.  The argument suggesting that the filing of the
First Amended Law Division was a significant change in the
proceedings is not a compelling one.  Nonetheless, the Court
will not reach that issue, even on alternative basis for remand,
as the Court concludes it lacks subject matter jurisdiction.

Neither party fully explains the legal mechanism that is a "transfer order," so this Court must make inquiry into the mechanism to understand how it impacts the diversity analysis. New Jersey Court Rule 4:3-1 contains a provision for "Transfer [of cases] Between [the] Law and Chancery Division[s]."[6]  N.J.R. 4:3-1(b).  The rule explains that a motion to transfer an action from one division or part of the Superior Court to another may be made by any party, or *sua sponte* made by a court.  Id.

Few courts have taken the opportunity to discuss, at any length, the transfer rules.  On one of the rare occasions such rules were discussed, the Superior Court of New Jersey, Appellate Division referenced New Jersey Court Rule 4:38-2 when discussing the issue of transfer.  Baureis v. Summit Trust Co., 654 A.2d 1017, 1021 (N.J. Super. Ct. App. Div.), certif. denied, 660 A.2d 1197 (N.J. 1995).  The Court reads the Appellate Division's citation to Rule 4:38-2 as suggesting its relevancy to Rule 4:3-1.  Following the Appellate Division's lead, we turn to that rule for further guidance.

---

[6] Neither party identifies the rule the Chancery Division relied on in issuing the Transfer Order.  Notably, the Transfer Order itself is silent as to what rule or authority the Chancery Division invoked in effectuating transfer.  Having reviewed New Jersey's Court Rules, it appears relatively clear that Rule 4:3-1 provides the requisite authority and is, therefore, the provision relevant to the Court's analysis.

Rule 4:38-2 has two sections, the first discusses severance of claims while the second discusses bifurcation:

(a)  Severance of Claims.  The court, for the convenience of the parties or to avoid prejudice, may order a separate trial of any claim, cross-claim, counterclaim, third-party claim, or separate issue, or of any number of claims, cross-claims, counterclaims, third-party claims, or issues.

(b)  Separation of Liability and Damage Claims.  Whenever multiple parties, issues or claims are presented in individual or consolidated actions and the nature of the action or actions is such that a trial of all issues as to liability and damages may be complex and confusing, or whenever the court finds that a substantial saving of time would result from trial of the issue of liability in the first instance, the court may on a party's or its own motion, direct that the issues of liability and damages be separately tried.  Except in extraordinary circumstances, the issue of liability shall be tried first and if the order of bifurcation otherwise directs, the reasons therefor shall be explicitly stated therein.

N.J.R. 4:38-2.

Based upon the available rules and the Appellate Division's discussion of them, the Court concludes that a state trial court may (1) transfer a case pursuant to Rule 4:3-1(b) in whole or in part, and if in part, (2) by either severing it (N.J.R. 4:38-2(a)) or bifurcating it (N.J.R. 4:38-2(b)).[7]  In this action, the

---

[7] It could be true that a partial transfer operates entirely independent of a bifurcation or severance in the sense that it operates as a case management device.  However, as discussed infra, matters that are moved around state courts for case management purposes are not removable based upon those case management decisions.  Second, Defendant has not demonstrated that a transferred action for case management purposes amends

Transfer Order makes clear the state court sought to transfer
part of the state court action to the Law Division.  What
remains unclear, however, is whether the state court sought to
transfer the matter by (1) severing it, or (2) bifurcating it;
indeed, the Transfer Order is silent on the issue.  As
discussed, <u>infra</u>, the distinction between severance and
bifurcation appears critical to the issue of whether the
Transfer Order created a removable action.

      b. <u>Severance & Bifurcation</u>

It appears unsettled in this Circuit – and largely
throughout the country – whether bifurcated or severed claims
may be removed to federal court.  Nonetheless, courts that have
addressed the issue find the difference between severance and
bifurcation important:

> A "severance" is "[t]he separation of claims, by the
> court, of multiple parties either to permit *separate*
> actions on each claim or to allow certain
> interlocutory orders to become final." BLACK'S LAW
> DICTIONARY 1378 (7th ed. 1999) (emphasis added).  The
> "separate actions" portion is most instructive: A
> severance necessarily implies a complete separation to
> the point of independence.  That is, a severance could
> take one non-removable action and separate it into
> multiple actions — the final result of each being
> entirely independent of the other — one of which could
> be removable.

---

parties to an action.  As such, because Marco Construction and
Plaintiffs were all New Jersey citizens, Defendant would still
be found to have not carried its burden of demonstrating
complete diversity.

Brown v. Tax Ease Lien Invs., LLC, 77 F. Supp. 3d 598, 603-04

(W.D. Ky. 2015).[8]  Bifurcation is different.

> [Bifurcation and severance] are two different words
> used by the bench and bar as terms of art to symbolize
> two different occurrences. . . . "bifurcation" implies
> a single action or case that is handled in multiple
> phases, usually for efficiency or fairness' sake.
> Though the phases are handled *separately*, the results
> are still dependent.  For example, when a single case
> is bifurcated into a trial on liability and a trial on
> damages, the damages phase becomes moot if the first
> phase concludes there was no liability.  The
> distinction between separate lawsuits (severance) and
> separate trials (bifurcation) "exists and is
> significant . . . . Separate *trials* will usually
> result in one judgment, but severed claims become
> entirely independent actions to be tried, and judgment
> entered thereon, independently."

Brown, 77 F. Supp. 3d at 603-04 (quoting Phillips v. Unijax,

Inc., 625 F.2d 54, 56 (5th Cir. 1980)).  "Unfortunately[,] this

distinction, clear enough in theory, is often obscured in

practice since at times the courts talk of 'separate trial' and

severance interchangeably."  Id. (quoting Phillips, 625 F.2d at

56).

    Some courts have suggested that removal of actions filed in

state court and subsequently severed, bifurcated, or transferred

by that state court would never be proper.  See Concerned

Citizens of Caro v. Michigan Ethanol, LLC, 396 F. Supp. 2d 814,

---

[8] Black's Law Dictionary has since amended its definition of the
term "severance."  See SEVERANCE, Black's Law Dictionary (11th
ed. 2019).  The Court has reviewed this updated definition and
finds the revision inconsequential to the present analysis.

818 (E.D. Mich. 2005) ("The manner in which the state court chooses to administer the lawsuit or divide the claims for separate trials or other adjudicative treatment cannot turn one lawsuit into two for the purpose of the removal statute and the review of jurisdiction that must occur in every federal civil action.").

Other courts have drawn a more clear distinction between how to treat severed and bifurcated actions, concluding that severed claims creating a new action may be removed, while bifurcated claims that remain part of one, non-removable action may not.  See Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d 529 (5th Cir. 2006) (state court's severance of claims against a group of defendants triggered right to remove because diversity jurisdiction existed); Phillips, 625 F.2d at 56 (an order granting separate trials, or bifurcation, did not sever claims and thereby create two separate lawsuits for purposes of removal); but see Miller v. Fulton, 113 F. Supp. 2d 1035, 1039 (S.D. Miss. 2000) (a state-court order providing for "severance and separate trials" of claims against a diverse defendant and a non-diverse defendant did not permit removal of the claim against the diverse defendant, where the claims had not been separately docketed in state court and the claim against the non-diverse defendant had been removed together with the claim

against the diverse defendant); Flores-Duenas v. Briones, No. 13-660, 2013 U.S. Dist. LEXIS 173620, *102 (D.N.M. Dec. 1, 2013) ("It is true that defendants could, instead, move to sever in state court, then remove the severed claim to federal court.").

Courts have cautioned, however, that use of the term "severance" alone is not necessarily dispositive as to the appropriateness of removal; instead, further inquiry is required. Vogel v. Merck & Co., 476 F. Supp. 2d 996, 999-1000 (S.D. Ill. 2007) (citing Nolan v. Boeing Co., 919 F.2d 1058, 1067 (5th Cir. 1990)) ("In the context of removal to federal court in diversity jurisdiction, the mere fact that an order of a state court purports to have 'severed' claims generally is insufficient to make a case removable"); Caldwell v. Alfa Insurance Corp., 806 F. Supp. 623-24 (S.D. Miss. 1992) (a state-court order providing that a plaintiff's claims against a non-diverse defendant were "severed for trial purposes" from claims against a diverse defendant did not permit removal of the claims against the diverse defendant); Jacome de Espina v. Jackson, No. 15-2059, 2015 U.S. Dist. LEXIS 140369, *5-6 (D. Md. Oct. 14, 2015) (quoting Wittstadt v. Reyes, 113 F. Supp. 3d 804 (D. Md. July 13, 2015) ("'[s]everance for litigation' is not the same as severance into independent separate actions sufficient to trigger the right to remove.").

The <u>Vogel</u> court citied the United States District Court for the Eastern District of Texas in finding that certain factors should be assessed in determining whether a state court's "severance" is sufficient to ripen removability. <u>Vogel</u>, 476 F. Supp. 2d at 1000 (citing <u>Johnson v. Snapper Division of Fuqua Industries, Inc.</u>, 825 F. Supp. 127, 129 (E.D. Tex. 1993)). The factors considered by both courts include: (1) whether the severance "truly create[s] different lawsuits, and not just separate trials in a single lawsuit"; (2) whether a non-diverse party has been removed to federal court together with a diverse defendant and whether the diverse party is participating in the pre-trial proceedings in the federal court, "leading to the conclusion that no true severance has taken place"; and (3) whether the state court severance has "result[ed] in entirely separate actions with separate judgments for the claims which are severed." <u>Id.</u> (quoting <u>Johnson</u>, 825 F. Supp. at 129).

This Court has been unable to locate authority from the Third Circuit or this District expressing a view on which of the above rules, if any, applies to actions proceeding in this Court. Nonetheless, the Court is informed by the authority cited above, and in light of the facts presented, concludes that the Transfer Order did not create a removable action.

c. <u>The Transfer Order Did Not Create A Removable Action</u>

The Transfer Order does not provide explicit guidance on how to treat the state-court action post-transfer, whether as severed, bifurcated, or otherwise. Notably, the only term used in the Transfer Order is *transferred*.[9] Review of the relevant facts in light of the factors set forth in Vogel does not provide clear direction.

On the one hand, the Law Division and Chancery Division portions of the state-court action bore separate docket numbers upon transfer. Such may suggest the Chancery Division intended to sever the claims and create separate actions. Under the Vogel factors, this weighs in favor of finding removal proper.

On the other hand, the Chancery Division explicitly retained management of the transferred portion of the case and set various deadlines for the Law Division portion, suggesting it was simply bifurcating matters for case management purposes. Authority of various courts suggests this militates in favor of finding removal improper. See Concerned Citizens, 396 F. Supp. 2d at 818 ("The manner in which the state court chooses to administer the lawsuit or divide the claims for separate trials or other adjudicative treatment cannot turn one lawsuit into two

---

[9] Black's Law Dictionary's definition of the term *transfer* is inconsequential to the present analysis.

for the purpose of the removal statute"); <u>Phillips</u>, 625 F.2d at 56.

Additionally, the state court's electronic notice cuts both ways and provides little guidance. By listing all parties to the Chancery Division docket on the Law Division docket, the state court suggests the matters resulted from bifurcation. On the other hand, by mailing notice only to a select few parties, the state court suggests the matters were distinct or severed. Concluding that these facts effectively equal each other out and, recognizing that all doubts are to be construed in favor of remand, the electronic notice must be viewed as favoring remand.

On balance, the Court finds the relief afforded by the Transfer Order more akin to bifurcating claims as opposed to severing them. The Superior Court of New Jersey is a unified court comprised of various parts and divisions, and its rules explicitly provide for the fluid transfer of cases between those various parts or divisions for case management purposes. <u>See</u> N.J.R. 4:3-1(b). The Chancery Division's election to retain jurisdiction and control over the portion transferred to the Law Division further supports the conclusion that the matters would be coordinated and handled together, albeit separated for certain proceedings; such is the hallmark of bifurcation.

Guided by the authority cited, supra, the Court finds these circumstances support remand.

Moreover, the Court pauses to recognize that New Jersey's entire controversy doctrine militates in favor of finding that the Transfer Order did not create a removable action. Plaintiffs' decision to file their complaint against both Defendant and the other state-court defendants suggests that the claims against all state-court defendants are, at the very least, related. To sever them now, some to be litigated in state court while some are litigated in federal court, risks issuance of contrary decisions on related matters. New Jersey's entire controversy doctrine, which operates to keep related disputes together for purposes of litigation and case management, seeks to prevent this very occurrence. Fornarotto v. Am. Waterworks Co., 144 F.3d 276, 278 (3d Cir. 1998) (quoting Olds v. Donnelly, 696 A.2d 633, 637 (N.J. 1997)) ("The 'entire controversy doctrine seeks to assure that all aspects of a legal dispute occur in a single lawsuit'"); see Aliperio v. Bank of Am., N.A., No. 2:16-1008, 2016 U.S. Dist. LEXIS 172490, *25 (D.N.J. Dec. 13, 2016) (quoting Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 137 (3d Cir. 1999)) ("The doctrine aims to avoid piecemeal decisions, promote efficiency, and ensure 'fairness to parties to an action and to others with a material

interest in it.'"). As such, the Court hesitates to conclude
the Transfer Order severed claims and created a new, removable
action, where such a finding would run contrary to the general
principles and policies behind the entire controversy doctrine.

For all of those reasons, this Court concludes the Transfer
Order did not create a removable action. Instead, the facts
lead this Court to conclude that the Transfer Order created a
circumstance more akin to a bifurcation, leaving all parts of
the Initial State Court Action within the purview and control of
the Superior Court. Such a conclusion necessarily begs another:
that because the actions remained joined, all parties remain
parties to both the Chancery Division and Law Division portions
of the Initial State Court Action. Because Plaintiffs (on the
one side) and Marco Construction (on the other) are both New
Jersey Citizens, see (ECF No. 10), diversity is incomplete.
Therefore, removal on the basis of diversity was improper and
this Court necessarily lacks subject matter jurisdiction.

As the Third Circuit has long held, the burden of
establishing that removal was proper lies with the removing
party. Samuel-Bassett, 357 F.3d at 396, 403 ("The party
asserting jurisdiction bears the burden of showing that at all
stages of the litigation the case is properly before the federal
court"). The Third Circuit directs that "doubts must be

resolved in favor of remand." Id. at 396, 403.  It is

abundantly clear that, at the very least, substantial doubts

exist as to whether the Transfer Order created a removable

action, and therefore, whether diversity exists.  Because such

doubts remain, Defendant has not met its burden of showing that

removal was proper.  Having so concluded, this action must be

remanded for lack of subject matter jurisdiction.

**CONCLUSION**

For the reasons set forth above, this matter will be *sua

sponte* remanded to the Superior Court of New Jersey for lack of

subject matter jurisdiction.  Plaintiffs' motion to remand on

other grounds (ECF No. 7) will be denied as moot.  Similarly,

Plaintiffs' motion to join additional parties (ECF No. 21) will

also be denied as moot.  The Clerk will be Ordered to return

this matter to the Superior Court and close this action.  An

appropriate Order will follow.


Date: March 4, 2020            __s/ Noel L. Hillman____
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.